### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| RETAIL SERVICE SYSTEMS, INC. | Case No. 2:13-cv-00994 |
| PLAINTIFF, | Judge George Smith |
| V. | Magistrate Judge Mark Abel |
| CAROLINA BEDDING DIRECT, LLC, *et al.*, | |
| DEFENDANTS. | |

### DEFENDANT CAROLINA BEDDING DIRECT LLC'S MOTION TO ALLOW LIMITED EXPEDITED DISCOVERY REGARDING WHETHER PLAINTIFF'S COUNSEL HAS AN OWNERSHIP INTEREST IN PLAINTIFF

Pursuant to the Court's inherent power to conduct and regulate discovery, Putative Defendant Carolina Bedding Direct, LLC, a dissolved North Carolina entity ("CBD Dissolved"), hereby moves this Court for leave to conduct discovery regarding whether the law firm of Organ Cole LLP, formerly Organ Cole + Stock LLP, or the named partners therein, have a proprietary interest in the cause of action or subject matter of the litigation they are conducting for Plaintiff Retail Service Systems, Inc. ("RSS").

CBD Dissolved further requests that the discovery be permitted on an expedited basis.

A Memorandum in Support of this Motion is attached.

Dated: April 18, 2014

Respectfully submitted,

s/Daniel J. Clark
Daniel J. Clark, Trial Attorney (0075125)
William A. Sieck (0071813)
Angelyne E. Lisinski (0089699)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel: 614.464.6436
Fax: 614.719.4650

Email: djclark@vorys.com
wasieck@vorys.com
aelisinski@vorys.com

*Counsel to Defendants*
*Carolina Bedding Direct, LLC and Mattress By Appointment, LLC*

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Plaintiff's President has threatened to "drop a bomb on" Defendant because his lawyers are not charging him for their services but, rather, are acting to maximize their personal interests as 20% owners of Plaintiff.  For more than a month, Plaintiff has refused to identify its owners in response to a routine interrogatory and Plaintiff's lawyers have refused to state whether they have an ownership interest in Plaintiff.  This motion seeks permission from the Court for CBD Dissolved to conduct discrete expedited discovery determinative of whether Plaintiff's counsel possesses an impermissible personal proprietary interest in the case.[1]

Plaintiff's President has informed Defendant that Plaintiff's counsel took a twenty percent equity stake in Plaintiff RSS.  In exchange for equity in RSS, the law firm of Organ Cole + Stock LLP, now renamed Organ Cole LLP ("Organ Cole"), or, at least, its two named partners, agreed to represent RSS free of charge.  If that is true, that transaction changed the very nature of this litigation and created a conflict of interest that Plaintiff cannot waive and would necessitate the withdrawal or disqualification of counsel for RSS.  Accordingly, Defendant should be permitted to conduct discrete, expedited discovery relevant to whether Organ Cole should be disqualified from representing RSS in the instant litigation.

II. **RELEVANT BACKGROUND**

   A. **RSS's Allegations Against CBD Dissolved Are Inconsistent with the Positions Taken By RSS's Owners and their Lawyers in Prior Litigation.**

Plaintiff RSS brings this case alleging misappropriation by Defendant of trade secrets of a third party PMD.  Complaint ¶ 4.  Although RSS has inexplicably refused to identify its owners and has refused to define the alleged trade secrets with the requisite specificity (and while CBD

---

[1] This motion does not concern the contentious but more common discovery disputes that have arisen here. Those can and will be addressed by agreement, discovery conference or motion, as appropriate.

Dissolved questions whether RSS has any actionable trade secrets at all), it is clear that RSS created no trade secrets of its own but has premised is entire case on trade secrets it supposedly acquired from PMD through litigation in June 2013.

Carleton Scott Andrew sued PMD in the Franklin County Court of Common Pleas in October 2008 (Case No. 08CV014309). Andrew alleged that PMD's business methods amounted to a "fraudulent bait and switch program." See Second Amended Complaint ¶ 28, attached as Exhibit A. Specifically, Andrew alleged that PMD had dramatically and intentionally misrepresented nearly every fact about PMD and had overstated the success of PMD's business methods in an effort to induce him to invest in a PMD franchise in Greenville, South Carolina. Id. ¶ 45-46. Andrew specifically also alleged that PMD had failed to ensure that PMD's business methodology was not copied by competitors. Andrew alleged that PMD permitted Don Mintz, a former PMD dealer, to actively compete against his PMD franchise by utilizing PMD's business methods.

> 135. PMD and Defendant Armetta were also fully aware of Don Mintz' continued operations of a competitive business in the Greenville territory using PMD's very own advertising and systems to compete against [Scott Andrew] and with this type of competition going on it was not reasonable to expect any PMD Dealer to be able to generate the expectations thrust upon [Andrew] at the threat of terminations.

Id. ¶ 135. In fact, Andrew alleged that PMD misrepresented to him the efforts that PMD had gone through to prevent former PMD dealers from competing with existing dealers. Id. ¶ 121.

Andrew prevailed in his fraud case against PMD and obtained a judgment against PMD and its owners. See Jury Interrogatory Nos. 1 & 2 and Judgment Entry, attached as Exhibit B-1. On June 13, 2013, Andrew resolved his judgment against PMD by having assets of PMD transferred to him through an Asset Purchase Agreement dated June 12, 2013. See Satisfaction of Judgment, attached as Exhibit B-2. These assets were transferred from PMD to Plaintiff RSS,

2

a corporation created to hold the former PMD assets. Id. at 2. Thus, RSS's sole assets appear to be assets transferred from PMD, specifically any trade secrets of PMD.[2] Complaint ¶ 2-3.

Incredibly, even though Andrew's successful litigation against PMD was premised on the allegation that PMD had lied to him when it told him that it had valuable trade secrets and had made reasonable efforts to protect the secrecy of its business methods, Andrew has now put himself into PMD's shoes and has taken the opposite position, alleging that PMD's business methodologies still constitute protectable trade secrets.[3]

**B. RSS Was Formed to Hold PMD's Assets With Plaintiff's Counsel as Hidden Owners of RSS.**

RSS, Inc. was formed as an Ohio corporation on May 22, 2013. Soon thereafter, RSS's counsel, Shawn Organ, formed OC Retail Services, LLC ("OC Retail Services"). See Articles of Organization of OC Retail Services, LLC, attached as Exhibit C. OC Retail Services is a limited liability company jointly owned by RSS's counsel in this matter, and named partners in the recently renamed firm Organ Cole LLP, Shawn Organ and Doug Cole. See Declaration of Darren Conrad ¶ 3, attached as Exhibit D. Through this limited liability company, RSS's counsel hold a twenty percent ownership interest in RSS. Id. Defendant is unaware of any assets that OC Retail Services LLC holds other than the ownership interest in RSS. OC Retail Services was apparently created to hide counsel's ownership of RSS.

---

[2] These facts are drawn from RSS's Complaint and the Satisfaction of Judgment filed in state court, RSS repeatedly refused to produce the alleged June 12, 2013 Asset Purchase Agreement, which purportedly transfers ownership of unspecified trade secrets. Complaint ¶ 2-3. On Friday, April 4, 2014, RSS finally produced the Asset Purchase Agreement, but did so as "Highly Confidential." While that designation is suspect, Defendant simply notes here that a copy of the Asset Purchase Agreement is available for in camera consideration by the Court.

[3] When PMD knowingly allowed PMD dealers, such as Don Mintz, to compete with PMD utilizing PMD's business methods, PMD lost any ability to claim trade secret protection over its business methods. Power Marketing Direct, Inc. v. Bryce Bell, Case No. 2:03-cv-01001-ALM-MRA, p. 10 (S.D. Ohio June 28, 2004) (dismissing trade secrets claim asserted by PMD and holding that PMD failed to take reasonable measures to maintain the secrecy of its sales and marketing material and industry contacts as trade secrets) (citing Hildreth Mfg. v. Semco Inc., 151 Ohio App. 3d 693, 709 (2003)).

### C. Plaintiff's Counsel's Role as Co-Owners Allows RSS to Threaten Defendants.

Defendant first became aware of Plaintiff's counsel's potential ownership interest in RSS following an in-person meeting between Scott Andrew and Darren Conrad on February 15, 2014. Id. at ¶ 1. Andrew met with Conrad purportedly to discuss the instant litigation face-to-face, as well as litigation that RSS was pursuing separately against Mr. Conrad individually. Id.

Andrew told Conrad that because Mr. Organ and Mr. Cole had an ownership interest in RSS, that their law firm of Organ Cole (at that time, Organ Cole + Stock LLP) was providing legal services in this case without charge because Mr. Organ and Mr. Cole stood to benefit personally from the litigation by virtue of their ownership interest in RSS. Id. Andrew explained that because of this relationship with its legal counsel, RSS and its counsel would be "super aggressive" in pursuing litigation against Defendant. Id. ¶ 2. Andrew continued that Conrad "had not seen anything yet" and that RSS was "about to drop the bomb." Id.[4]

### D. RSS Refuses to Disclose Its Owners and Is Less Than Candid With the Court.

On March 11, 2014, Defendant sent Plaintiff's counsel a letter, informing Plaintiff's counsel that Defendant had prepared its "Attorneys' Eyes Only" documents for production. See March 11, 2014 Letter, Attached as Exhibit E. Defendant sought clarification, as to whether or not attorneys at Organ Cole were owners of RSS. Defendant's counsel noted its specific concern that Mr. Organ and Mr. Cole had such an interest. If attorneys at Organ Cole did, in fact, own a portion of RSS, the "Attorneys' Eyes Only" designation would be useless, because any

---

[4] Since Andrew's threats of February 15, RSS, through its counsel, has made good on his threats. RSS's counsel has sent subpoenas and harassing letters to dozens of current and former customers of CBD Dissolved and Carolina Bedding Direct LLC of Florida. Conrad Decl. ¶ 5. RSS's counsel spoke with an officer of Carolina Bedding Direct LLC of Florida's primary mattress supplier in an effort to induce the supplier not to do business with the company. Id. RSS's counsel has engaged in discovery that far exceeds the limited scope of discovery provided for by the Court. See Defendant's Motion for Protective Order (Dkt. 52). These tactics are designed to damage the business of Carolina Bedding Direct, LLC of Florida, an entity that RSS has not even sued.

4

production to Organ Cole would be a *de facto* production to RSS. Plaintiff's counsel did not respond to this inquiry.

On March 14, 2014, Defendant sent a follow-up letter, again asking whether or not Organ Cole partners held an equity stake in RSS. See March 14, 2014 Letter, Attached as Exhibit F. Defendant reiterated its concern that, if Organ Cole partners owned RSS, then any "Attorneys' Eyes Only" production would actually be a revelation of confidential business information to the owners of RSS. Again, Plaintiff's counsel ignored this inquiry.

Finally, on March 18, 2014, Plaintiff's counsel was required to respond, when Plaintiff's counsel and Defendant's counsel participated in a discovery conference with Magistrate Judge Abel. This Court's March 19, 2014 Order describes what transpired:

> Defendant Carolina Bedding (NC) had identified documents regarding its dealers (characterized as customers) and their sales as highly confidential-attorneys' eyes only. Defendant did not want to disclose those documents unless plaintiff's counsel gave assurances that they were not shareholders in RSS. During the conference, plaintiff's counsel said that such assurances were not required because they are officers of the occur and would not violate the protective order. While I accept that representation, **I understand why defendant might be concerned about sensitive commercial information residing in the mind of an attorney-shareholder,** *so I asked the question directly. Plaintiff's counsel responded that they held no stock in RSS.*

March 19, 2014 Order, at 2 (emphasis added). This was Plaintiff's counsel's first and, to date, only, response to the question about the relationship between Organ Cole and RSS.

While it may be true that Messrs. Organ and Cole do not *personally* own RSS stock, it may not be the whole truth. Rather, Mr. Andrew explained that **Mr. Organ and Mr. Cole, in fact, own 100% of a business entity, OC Retail Services, which in turn owns twenty percent of RSS**. See Conrad Decl. ¶ 4. Thus, Defendant has evidence that RSS has employed a "shell game" to hide its counsel's impermissible proprietary interest.

5

Because the issue of an impermissible interest is a sensitive, serious one, CBD Dissolved has made further efforts to confirm the accuracy of Andrew's statements regarding the identity of RSS's owners, each of which has been rebuffed. First, on February 21, 2014, CBD Dissolved served an interrogatory asking RSS to identify its owners. RSS refused to answer this routine interrogatory. Second, on March 31, 2014, CBD Dissolved served Requests for Admission on Plaintiff RSS asking RSS to admit or deny Andrew's statements regarding RSS's ownership. See Second Requests for Admission, attached as Exhibit G. RSS counsel responded to the RFAs by indicating an intention not to simply respond to them or to object but, instead, to file an immediate motion with the Court to avoid answering them. See April 1, 2014 Letter, attached as Exhibit H. Embroiled at the time in more immediate and voluminous discovery disputes with RSS, CBD Dissolved agreed to withdraw the Second Set of RFAs – without prejudice.

Given RSS's persistent efforts to avoid disclosing its owners and to avoid discovery on these topics, CBD Dissolved believes that the statements of RSS's President Scott Andrew were accurate. If accurate, Mr. Andrew's statements would necessitate disqualification of RSS's counsel. Therefore, CBD Dissolved should be entitled to discovery on an expedited basis into this discrete topic – that is, whether RSS's counsel owns a proprietary interest in RSS.

### III. ARGUMENT

#### A. Discovery Is Within the Discretion of The Court.

The Court has discretion to determine the proper scope of discovery. *See Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). This case is not proceeding as a fair fight between the parties but, instead, is stuck in an ambiguous posture of potential default by one or more putative defendants. In light of that posture, the Court allowed discovery to proceed on a limited basis regarding Plaintiff's prima facie case, Plaintiff's alleged damages, and whether there is jurisdiction over the putative defendants, who dispute proper service. (Order of 2/20/14

at 5-6, Dkt. 29) ("the merits discovery I envision is relatively limited").  Through this Motion, Defendant submits that an additional discrete topic be added to the scope of discovery.

### B. Whether Plaintiff's Counsel Owns A Share Of Plaintiff Is Relevant To, But Bigger Than, The Limited Discovery Allowed To Date.

This motion seeks permission to take discrete discovery on a matter relevant to but perhaps greater in scope than what this Court has allowed to date.  Specifically, Defendant seeks to determine who owns Plaintiff.  The answer to this question will reveal whether Plaintiff's counsel possess a proprietary interest in this litigation by virtue of owning an interest in Plaintiff.  If attorneys Organ and Cole own a twenty percent stake in RSS, the continued role of Organ Cole as counsel for Plaintiff would be improper under Rule 1.8 of Ohio's Rules of Professional Conduct and, moreover, would render the Court's protective order and its "Attorney Eyes Only" provisions ineffective.  Both circumstances would necessitate disqualification.  Therefore, the interests of justice warrant prompt and proper discovery on this discrete issue.

#### 1. Ohio's Rules of Professional Conduct Prohibit Plaintiff's Counsel From Owning a Proprietary Interest in The Subject Matter of the Litigation.

The Ohio Rules of Professional Conduct prohibit an attorney from acquiring "a proprietary interest in the cause of action or subject matter of the litigation the lawyer is conducting for a client * * *."  OHIO RULES OF PROF'L CONDUCT R. 1.8(i).  The only exceptions to this rule are for liens to secure fees or expenses and reasonable contingent fees.  Id.  The drafters of the rule intended it to "avoid giving the lawyer too great an interest in the representation," and prevent situations in which a client would feel he or she could not easily discharge his or her attorney.  MODEL RULES OF PROF'L CONDUCT R. 1.8, cmt. 16.  Sixth Circuit precedent establishes that the Rules of Professional Conduct govern questions of lawyer disqualification.  Khan v. Cellco P'ship, No. 1:10-cv-118, 2011 U.S. Dist. LEXIS 122894, at *4 (S.D. Ohio Sept. 8, 2011).

7

Under the facts as described by Plaintiff's President, disqualification would be appropriate here. In Peggy Walz, Inc. v. Liz Wain, Inc., No. 94-Civ-1579 (CSH), 1996 U.S. Dist. LEXIS 2294 (S.D.N.Y. Mar. 1, 1996), the district court disqualified plaintiff's lawyer, David Just, because he owned a portion of his client, Peggy Walz, Inc. ("PWI"). Id. at *1. The arrangement between Just and PWI called for PWI to first pay Just's co-owner's salary and insurance, then repay loans Just had made to the company, before finally dividing the remaining profits, with Just receiving forty percent. Id. at *4. In the event PWI filed a lawsuit, PWI would reimburse Just for out-of-pocket costs, and any monetary recovery would first pay Just's fees, before being split fifty-fifty. Id. Defendants sought disqualification because of Just's proprietary interest in PWI and because of the access Just would have to highly confidential material in discovery that was for attorneys eyes only under a stipulated protective order. Id. at *5. Both factors are present here.

The court explicitly disqualified Just because of his proprietary interest in PWI (Walz, at *5) and the access he would have to discovery material that was subject to an attorneys'-eyes-only protective order. Id. at *11-12. First, regarding Just's proprietary interest, the district court rejected Just's argument that his arrangement was similar to a contingent fee arrangement. Id. at *7-8. The Court noted that Just had "a substantial, explicit, and direct proprietary interest" in the causes of action, requiring disqualification. Id. at *7. The Court held that this arrangement, even if it was a contingent fee, would be impermissible "because to a significant degree it divest[ed] the plaintiff of her interest in the action." Id. at *8 (internal quotation omitted). Second, as to the issue of the protective order, the Court focused on the fact that:

> [A]t the times he was examining the confidential material produced by defendants in discovery, Mr. Just was both counsel of record for plaintiffs and the co-owner of the corporation. * * * Mr. Just acknowledges that he has examined defendants' confidential trade material, but says that he has not told Walz anything about it. I

8

> accept this representation, but I do not think that it remedies the problem. Just is, in truth and in fact, a co-owner of PWI. **It asks too much of him to erect a Chinese wall in his own mind, separating his functions as trial attorney and business proprietor.**

Walz, at *11-12 (emphasis added). Because the court did not find it appropriate for a co-owner to be analyzing protective discovery material, and because it was insufficient to rely on the representation that the attorney would not share the information with the non-lawyer co-owner, the Court disqualified Just from representing PWI. Id.

Walz, though illustrative, is hardly the only case reaching the conclusion that an attorney must be disqualified because of his or her proprietary interest in the subject of litigation. See Sauer v. Greene, 62 Ohio App.3d 22, 25-26, 574 N.E.2d 542 (2d Dist. 1989) (affirming disqualification of tenant's attorney in an eviction action, because attorney also lived at the property in question); United States v. Murray, No. CR-12-0278 EMC, 2013 U.S. Dist. LEXIS 33394, at *8 (N.D. Cal. Mar. 11, 2013) (attorney disqualified because he had received a portion of allegedly tainted money that was the focus of the proceedings). In 2009, Ohio's Eighth Appellate District upheld the disqualification of counsel under Rule 1.8(i) grounds where the attorney was a shareholder, and stood to profit from a legal action in which he sought to represent all shareholders. Carr v. Acacia Country Club Co., 8th Dist. Cuyahoga No. 91292, 2009-Ohio-628, ¶ 40. The Western District of New York reached a similar conclusion where an attorney held a thirty-three percent interest in the property that was the subject of the litigation, in consideration for representation in that litigation. Sauer v. Xerox Corp., 85 F. Supp.2d 198, 200-01 (W.D.N.Y. 2000).

If the facts are as described by Plaintiff's President – that is, if Plaintiff's counsel hold a proprietary interest in RSS though an LLC, of which they are members, that acts as a holding company for a twenty percent equity stake in RSS and are being compensated by their efforts to

9

increase the value of that interest – Ohio Rule of Professional Conduct 1.8(i) will require disqualification.

### 2. Formal Discovery Will Aid The Court's Determination Of Issues Directly Implicated By The Statements of Plaintiff's President.

As Plaintiff's President threatened would happen, Organ Cole's proprietary interest in RSS has already squarely impacted this litigation. In multiple conferences, the Court has inquired of Mr. Organ as to why RSS would be pursuing such an aggressive yet seemingly inefficient litigation strategy. From the outset it has been apparent that RSS's target in this litigation was not CBD Dissolved but rather individuals and entities who have not been named in the Complaint or served. RSS and Organ Cole, unburdened by the costs of litigation and lacking the objectivity that is attributable to professional disinterest from the underlying subject matter of the litigation, have made good on Scott Andrew's threat to Darren Conrad by employing a no-holds-barred, scorched-earth litigation strategy. See Conrad Decl. ¶¶ 2 and 5. RSS has refused to respond to basic discovery requests, like an interrogatory seeking information about RSS's owners. See Defendant's Motion to Compel p. 11-13 (Dkt. 43). This refusal is not based on the fact that the request is objectionable, but rather because a straightforward response would bar Organ Cole from continuing to represent the company, in which Mr. Organ and Mr. Cole hold a twenty percent stake, in the present litigation.

Equally concerning has been counsel's effort to avoid disclosing this conflict of interest, which culminated in Mr. Organ's perhaps true but not wholly true statement on March 18, 2014 that he was not a shareholder in RSS. See March 19, 2014 Order, at 2. While the basis for this representation can be examined in discovery, a demonstrated lack of candor with the tribunal could further a motion for disqualification. See Ohio Prof. Cond. R. 3.3(a)(1) (prohibiting an attorney from "knowingly" making a "false statement of fact" to the court); see also MODEL

10

RULES OF PROF'L CONDUCT R. 3.3, cmt. 1; Gordon v. Dadante, No. 1:05-CV-2726, 2009 U.S. Dist. LEXIS 76425, at *36-38 (S.D. Ohio Aug. 26, 2009) (noting district court's inherent power to disqualify an attorney who has made a material misrepresentation to the court).  This apparent lack of candor further evidences how counsel's independent professional judgment has been detrimentally impacted by a personal proprietary interest in the litigation.

The existence of the "Attorneys' Eyes Only" protective order also favors disqualification, if Plaintiff's attorneys are owners of RSS.  (Dkt. 37).  Counsel's representation that they will comply with the protective order – like the identical representations made by the attorney in question in Walz – are insufficient.  Mr. Organ and Mr. Cole cannot reasonably be expected to forever compartmentalize the information they see that is supposed to be "Attorneys' Eyes Only," and forget it or refuse to utilize it when acting as twenty percent owners of RSS.  While under the Court's auspices, and actively engaged in litigation, Organ Cole has an incentive to follow the protective order.  Once this litigation is over, however, situations may arise in which Mr. Organ and Mr. Cole could be forced to choose between either rendering their stake in RSS worthless, or disobeying the protective order.  As the Walz court recognized it is not possible for counsel "to erect a Chinese wall within his own mind, separating his functions as trial attorney and business proprietor."  Peggy Walz, Inc., 1996 U.S. Dist. LEXIS 2294, at *12 (S.D.N.Y. Mar. 1, 1996).

### 3. Discovery Should Be Expedited

Cognizant of the Court's limitation on the scope of discovery, Defendant request that the Court expand the scope of permitted discovery to include a full exploration of Plaintiff's counsel's proprietary interest in RSS.  This discovery will discover evidence that the could implicate counsel's ability to represent RSS under Rule 18.(i), determine the basis, if any, for

11

counsel's prior representations to the Court, and inform the Court's enforcement of the existing protective order.

Discovery on this topic should be expedited to permit it to be fully and promptly addressed. Discovery on this topic should take precedence over other discovery matter in the case. This topic is narrow and it should be very simple for RSS and its counsel to provide responsive information. Accordingly, Defendant requests that the Court order that RSS be required to respond to written discovery requests on this discrete topic within five (5) business days of service and that depositions, if any, on this topic be conducted within ten (10) business days of the issuance of a Notice.

Finally, Defendant requests that RSS be specifically ordered that any documents withheld on the basis of the attorney-client privilege be detailed in a privilege log, as required by Rule 26, and that the log be produced contemporaneously with the production of documents.

## II. CONCLUSION

RSS has resisted discovery that is relevant to issues central to this case and to the Court. Given RSS's President's threats and statements to Defendant, allowing Organ Cole to continue as counsel not only calls into question Organ Cole's ability to offer dispassionate legal advice, but also puts all discovery material currently covered by this Court's protective order at risk of being revealed to RSS. Defendant should be permitted to engaged in expedited discovery on this topic to discover evidence that would necessitate disqualification of the Organ Cole law firm and the attorneys associated with it.[5]

---

[5] Pursuant to Rule 1.8(k), when one or more lawyers from a firm are disqualified under 1.8(i), all lawyers associated with that firm are disqualified.

Dated:  April 18, 2014 Respectfully submitted,


        s/Daniel J. Clark
Daniel J. Clark, Trial Attorney (0075125)
William A. Sieck (0071813)
Angelyne E. Lisinski (0089699)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Tel:     614.464.6436
Fax:    614.719.4650
Email:  djclark@vorys.com
       wasieck@vorys.com
       aelisinski@vorys.com

*Counsel to Defendants*
*Carolina Bedding Direct, LLC and Mattress By Appointment, LLC*

13

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 18, 2014 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record who are deemed to have consented to electronic service.

                                                /s/Daniel J. Clark
                                                Daniel J. Clark

4/18/2014 19152600 V.2