IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RETAIL SERVICE SYSTEMS, INC., | ) |
| | ) Case No. 2:13-cv-00994 |
| Plaintiff, | ) |
| | ) Judge Smith |
| v. | ) |
| | ) Magistrate Judge Abel |
| CAROLINA BEDDING DIRECT, LLC, *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF RETAIL SERVICE SYSTEMS, INC.'S RESPONSE
TO DEFENDANT CAROLINA BEDDING (NC)'S
MOTION TO ALLOW DISCOVERY FROM PLAINTIFF'S COUNSEL (DKT. NO. 60)**

Since it first entered this litigation, Carolina Bedding (NC) has tried to deflect attention from its own actions to those of RSS and RSS's legal counsel—presumably because, having defaulted in this case and being precluded from challenging many of the issues raised in this suit,[1] it has no other real option to defend itself.  Carolina Bedding (NC) now takes another step along that path, asking this Court to authorize unspecified "discovery" into the personal finances of RSS's legal counsel, on the off chance that the information dug up would provide a basis to disqualify them.

---

[1] Among other things, Carolina Bedding (NC) is precluded from arguing that RSS does not have any trade secrets and that it failed to protect those trade secrets before 2009, when Carolina Bedding (NC)'s sole owner and employee, Darren Conrad, argued and lost both issues in the Franklin County Court of Common Pleas.  *See, e.g.*, *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 118 (Ohio 2006) ("[Issue preclusion holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different."); *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1069-70 (6th Cir. 1995) ("A nonparty will be considered in privity, or sufficiently close to a party in the prior suit so as to justify preclusion, [when the non-party] has succeeded to a party's interest in property [or when the non-party's] interests were represented adequately by a party in the original suit.").

This motion is not the first time that Carolina Bedding (NC) has tried to claim that the financial information of RSS's legal counsel is relevant to this case. Rather, it has sought this information on several different occasions, changing its story and its rationale for such intrusive and extraordinary discovery at each turn. But nowhere has it actually shown a legal basis for the discovery it seeks. Its latest motion is no exception. Even if, as Carolina Bedding (NC) claims, RSS's counsel owned some percentage interest in the company—which it does not (*see* Ex. A)—Carolina Bedding (NC) still fails to provide any basis for disqualifying RSS's counsel. Further, Carolina Bedding (NC) has not proven that its disqualification fishing expedition is crucial to the preparation of its case and that there is no narrower means of obtaining the information it seeks, as the law of this Circuit requires. For these reasons, and others discussed below, this Court should deny Carolina Bedding (NC)'s motion.

## I. BACKGROUND

On March 10, this Court issued a protective order setting out how the parties to this case would treat private and confidential information produced in discovery. (*See* Dkt. No. 37). This order defines two categories of protected information, "Confidential" and "Highly Confidential and/or Attorneys' Eyes Only," and it sets out a list of persons to whom each type of information may be disclosed. (*See id.* at PageID 613, 615-16). In particular, the order states that both types of information may by disclosed to "[t]his Court," "***[c]ounsel for the non-designating parties***," and certain witnesses, among others. (*Id.* at PageID 616 (emphasis added)).

Carolina Bedding (NC) had drafted this protective order and submitted it to this Court. RSS had agreed to this proposal, despite its reservations about Carolina Bedding (NC)'s draft, in the interest of more promptly receiving the documents that Carolina Bedding (NC) had been withholding. (*See id.* at PageID 612).

Yet even once this order had issued, Carolina Bedding (NC) refused to produce any "Attorneys' Eyes Only" documents, claiming that their protective order did not provide adequate protection.  Specifically, Carolina Bedding (NC) claimed that RSS's legal counsel were actually owners of RSS, and that by virtue of that allegation, it could refuse to produce those Attorneys' Eyes Only documents—including its financial data—entirely.[2]

At first, Carolina Bedding (NC)'s supposed concern was that "Plaintiff's counsel – including at least [Shawn Organ] and Doug Cole – are actually owners and shareholders of Plaintiff."  (Ex. B, at 1; *see also* Ex. C, at 1).  When Carolina Bedding (NC) raised this concern during a telephonic status conference with this Court, RSS's counsel assured both Carolina Bedding (NC) and this Court that they were not RSS shareholders and that in any case, as officers of the Court they would not violate the Attorneys' Eyes Only designation in the protective order.  (*See* Dkt. No. 42, at PageID 1207).  This Court "accept[ed] that representation" and stated, "I believe the documents should be produced, subject to the protective order."  (*Id.*).

Carolina Bedding (NC) still refused to produce its Attorneys' Eyes Only documents.  Rather, 12 days later, Carolina Bedding (NC) served RSS with Requests for Admission seeking further information about the finances and legal arrangements of RSS's counsel.  (*See* Ex. D).  With these requests, Carolina Bedding (NC) significantly broadened its inquiry.  Having been unable to show that counsel were owners or shareholders of RSS, as it originally represented to this Court, Carolina Bedding (NC) now sought to pry into whether Shawn Organ, Douglas Cole, or Organ Cole + Stock LLP (now Organ Cole LLP) had any incidental interest in RSS.  In particular, Carolina Bedding (NC) asked whether Messrs. Organ and Cole, or their law firm, were "current or former owner[s] or shareholder[s]" of a number of different entities and whether

---

[2] Carolina Bedding (NC) did, however, produce 16 pages of unrestricted documents and an additional 17 pages of Confidential documents.

3

*those* entities were "current or former owner[s] or shareholder[s]" of RSS. (*See id.* at 2-3 (RFAs 1-6)).

After it received these discovery requests, RSS sent Carolina Bedding (NC) a letter explaining its position and proposing a modification to Carolina Bedding (NC)'s protective order to assuage its concerns. (*See* Ex. E). Over the next week, Carolina Bedding (NC) both withdrew its Requests and agreed to produce the Highly Confidential documents about which it had previously expressed concerns—both without any modification to the protective order. (*See* Exs. F, G).

Unfortunately, Carolina Bedding (NC) had merely backed up only to get a running start. On April 18, Carolina Bedding (NC) filed the instant motion, asking once again to take discovery from RSS's legal counsel regarding any alleged personal financial position they may have with RSS. Carolina Bedding (NC)'s new claims are even broader than its last ones. It now alleges that counsel has either taken "a twenty percent equity stake in Plaintiff RSS," or at least "agreed to represent RSS free of charge." (Dkt. No. 60, at PageID 1902). Its reason for seeking this information has also changed. Carolina Bedding (NC) now argues that this information may show a conflict of interest between RSS and its attorneys, and it seeks discovery about this information so that it can try to disqualify RSS's chosen legal counsel. (*See id.*). This motion, however, is not based on any new information discovered by Carolina Bedding (NC). Rather, it claims that it first learned of the basis for these claims back on February 15th of this year. (*See id.* at PageID 1905). Carolina Bedding (NC) offers no explanation for waiting to seek this allegedly crucial information until after it had produced Attorneys' Eyes Only documents to RSS and after it had withdrawn its earlier, equally invasive yet narrower requests.

4

**II.  DISCUSSION**

Carolina Bedding (NC)'s motion seeks leave to take unspecified discovery regarding RSS's legal counsel's personal finances.  Yet the courts have long recognized that "discovery from counsel of record should only be granted as a last resort."  *Cotten v. Burt*, No. CIV A 04CV-73508-DT, 2007 WL 3104267, at *1 (E.D. Mich. Oct. 22, 2007) (Majzoub, M.J.) (citing *Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1480 (D. Colo. 1996)).  Nowhere does Carolina Bedding (NC) acknowledge this standard or explain why such highly invasive discovery is necessary here.

Indeed, Carolina Bedding (NC)'s motion completely ignores the relevant legal test for taking discovery from opposing counsel.  As the Sixth Circuit has held, "Discovery from an opposing counsel is 'limited to where the party seeking to take the [discovery] has shown that (1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'"  *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).  The courts have cited many reasons for their reluctance to allow discovery from legal counsel.  As the Eighth Circuit stated in its seminal decision, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), taking discovery from counsel "detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent."  *Id.*  Other courts have noted that taking discovery from opposing counsel "undermine[s] attorney-client communications, present[s] unique opportunities for harassment, disrupt[s] opposing counsel's preparation, may lead to opposing counsel's disqualification, and may spawn collateral litigation on issues of privilege, scope, and relevancy."  *Coleman v. D.C.*, 284 F.R.D. 16, 18 (D.D.C. 2012).  Indeed, a number of courts

have cited the possibility of disqualification as a reason to refuse opposing-counsel discovery. *See, e.g.*, *Johnson v. Couturier*, 261 F.R.D. 188, 193 (E.D. Cal. 2009); *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 276-77 (D.D.C. 2001).

Carolina Bedding (NC) makes no effort to satisfy the *Nationwide* standard, for which it bears the burden. For that reason alone, its motion fails. But even if its motion had addressed the relevant three-prong test, it would not have been able to show an entitlement to the opposing-counsel discovery it seeks.

In the sections below, RSS will discuss each prong of *Nationwide*'s test. Because of the importance of clarifying the scope of what Carolina Bedding (NC) seeks, however, it is important to first discuss the relevance (or lack thereof) of this information. Thus, RSS will first address the second *Nationwide* prong—relevance—before turning to prongs one and three.

### A. The Information Carolina Bedding (NC) Seeks Is Not Relevant to This Action.

First, we must determine just what it is that Carolina Bedding (NC) is seeking. Its motion is frustratingly vague on this point. At various places, Carolina Bedding (NC) asks for unspecified discovery into "whether the law firm of Organ Cole LLP . . . or the named partners therein, have a proprietary interest in the cause of action or subject matter of the litigation they are conducting for [RSS]" (Dkt. No. 60, at PageID 1900); "whether Plaintiff's counsel possesses an impermissible personal proprietary interest in the case" (*id.* at PageID 1902); and "a full exploration of Plaintiff's counsel's proprietary interest in RSS." (*Id.* at PageID 1912). Nowhere does it specify just what the scope of this "proprietary interest" discovery would be, however. Elsewhere, Carolina Bedding (NC) more simply (and broadly) seeks discovery into "whether Organ Cole should be disqualified from representing RSS in the instant litigation" (*id.*) and into "Organ Cole's ability to offer dispassionate legal advice." (*Id.* at PageID 1913).

6

Ultimately, however, what Carolina Bedding (NC) seeks to prove is that one or more of RSS's attorneys are members of a limited liability company "that acts as a holding company for a twenty percent equity stake in RSS." (*Id.* at PageID 1910). The attached declaration of Carleton Scott Andrew, RSS's founder, President, and Board Chair, however, indicates that he and Jerry Williams are the only two shareholders of RSS. (*See* Ex. A, ¶ 6).

This declaration should put an end to Carolina Bedding (NC)'s improper efforts, not to mention its baseless and offensive claims that RSS's counsel has been "less than candid with the Court." (Dkt. No. 60, at PageID 1905). If the past is any indication, however, Carolina Bedding (NC) will instead argue that this discovery is still necessary to uncover some new, more attenuated connection between RSS and its counsel.

Any such claim should fail. Under the test set out in *Nationwide*, any further inquiry into RSS's counsel's personal finances must first be shown relevant to this case. Although Carolina Bedding (NC) claims that its discovery would lead to the disqualification of RSS's counsel— under an alleged set of facts that have now been shown to be false—Carolina Bedding (NC) never actually attempts to prove the point.

Specifically, Carolina Bedding (NC) hopes to argue that counsel's representation violates Ohio Rule of Professional Conduct 1.8, which prohibits lawyers, with certain exceptions, from having "a proprietary interest in the cause of action or subject matter of the litigation." Prof. Cond. R. 1.8(i). But it never actually shows that even if the Court accepts its allegations as true and assumes that a 20% interest is held, that alleged relationship between RSS and its counsel would constitute a "proprietary interest" under this Rule—let alone whether some more attenuated relationship would do so. Rather, Carolina Bedding (NC) focuses on a handful of cases, mostly from other jurisdictions, where attorneys have been disqualified under Rule 1.8 and

7

others like it for much more direct interests in litigation than Carolina Bedding (NC) even alleges here. For instance, Carolina Bedding (NC)'s cited cases disqualify attorneys for:

- entering an agreement with the client whereby the attorney would receive all costs of suit, all legal fees, and half of any remaining monetary recovery from lawsuits filed on the client's behalf, *see Peggy Walz, Inc. v. Liz Wain, Inc.*, No. 94 CIV. 1579, 1996 WL 88556, at *2 (S.D.N.Y. Mar. 1, 1996);

- living at the property that was the subject of litigation, *Sauer v. Greene*, 574 N.E.2d 542, 544 (Ohio Ct. App. 1989);

- receiving a portion of allegedly tainted funds that were the subject matter of the litigation, *United States v. Murray*, No. CR-12-0278 EMC, 2013 WL 942514, at *2-3 (N.D. Cal. Mar. 11, 2013);

- owning 33% of the equipment that was the subject matter of the litigation, *Sauer v. Xerox Corp.*, 85 F. Supp. 2d 198, 200 (W.D.N.Y. 2000); and

- filing a shareholder derivative action while being a shareholder himself, *Carr v. Acacia Country Club Co.*, 2009-Ohio-628, 2009 WL 348832, at *5 (Ohio Ct. App. Feb. 12, 2009).

But none of these cases address the situation allegedly at issue here. None holds that a lawyer cannot represent any company that he owns shares in, and none even suggests that the type of indirect ownership insinuated by Carolina Bedding (NC) would require disqualification.

Indeed, the Rules themselves imply what this Court noted during the last telephonic conference, and what common sense suggests—that holding shares in a client company is not by itself disqualifying. The comments to Rule 1.5, regarding fees and expenses, state that "[a] lawyer may accept property in payment for services, ***such as an ownership interest in an enterprise***, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8(i)." Prof. Cond. R. 1.5, cmt. 4 (emphasis added). If such an ownership interest were automatically disqualifying, as Carolina Bedding (NC) asserts, this comment would have no place in the Rules.

8

Further, "[a] motion to disqualify counsel faces a particularly high burden where there is no 'serious question as to counsel's ability to act as a zealous and effective advocate for the client[.]'" *Schonberg v. Fed. Election Comm'n*, No. CA10-2040JWR-CKK-RWR, 2011 WL 311038 (D.D.C. Feb. 1, 2011) (three-judge panel) (quoting *Koller v. Richardson–Merrell Inc.*, 737 F.2d 1038, 1056 (D.C.Cir. 1984)).  Carolina Bedding (NC) has raised no such "serious question" here, and accordingly, its suggestion that discovery will lead to disqualification of counsel is little more than rank speculation.

Carolina Bedding (NC)'s other basis for seeking discovery from opposing counsel—its claim that if the facts are as it believes, the protective order would bar counsel from receiving Attorneys' Eyes Only documents—also fails.  (*See* Dkt. No. 60, at PageID 1912).  As noted above, the protective order specifically allows "[c]ounsel for the non-designating parties" access to Attorneys' Eyes Only documents.  (Dkt. No. 37, at PageID 616).  Carolina Bedding (NC) not only drafted this protective order, but did so *after* it "learned" about RSS's counsel's alleged ownership interest.  Yet it drafted the order inclusively rather than exclusively; the order lists entities that *do* get to see Highly Confidential information, rather than entities that *do not*.  Because a party's legal counsel may see Attorney's Eyes Only documents, it would make no difference whether the attorneys also held shares in the underlying company—they would still be counsel, and would thus still have a right to receive those documents.  Indeed, Carolina Bedding (NC) has already produced Attorneys' Eyes Only documents to RSS's counsel, albeit in heavily redacted form.  Its opportunity to complain about the order it drafted has passed.[3]

---

[3] Of course, even if counsel were a part-owner of RSS, it would still be subject to the protective order's restrictions on use of restricted material, including its requirements that such material "shall be used solely for the purposes of prosecuting or defending the Action" and "may not be used for any business or commercial purpose, or for any other litigations, administrative

9

Even if Mr. Andrew's declaration did not put an end to this matter, Carolina Bedding (NC)'s inability to show why its allegations are legally relevant would. Because Carolina Bedding (NC) cannot show why the information it seeks would be relevant, this Court should deny its motion.

**B.    The Information Carolina Bedding (NC) Seeks Is Not Crucial to the Preparation of Its Case.**

The *Nationwide* test also requires that the information sought from opposing counsel be "crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); quotation marks omitted). Carolina Bedding (NC) asserts that it seeks discovery from opposing counsel in the hope that it will uncover "evidence that would necessitate disqualification of the Organ Cole law firm and the attorneys associated with it." (*Id.* at PageID 1913). But Carolina Bedding (NC) has not specified just what discovery it wishes to take from RSS's counsel, let alone shown that any such discovery is "crucial" to its case. It thus fails its burden of proof on this issue.

Further, the mere suggestion that Carolina Bedding (NC) *might* move to disqualify counsel after obtaining discovery is not enough to show that this information "is crucial" to its case. At present, there is no motion to disqualify pending before this Court, and Carolina Bedding (NC) may *never* file such a motion. This highly invasive discovery thus stands a good chance of being entirely irrelevant to Carolina Bedding (NC)'s case. *Cf. Layne Christensen Co. v. Purolite Co.*, No. CIV.A. 09-2381-JWL, 2011 WL 1230332, at *4 (D. Kan. Mar. 29, 2011) (holding, where court had already denied motion to disqualify, that "[t]he information sought by

---

proceedings, or dispute resolution procedures," except by court order or written agreement of the parties. (Dkt. No. 37, at PageID 617).

10

Plaintiffs is . . . no longer relevant to the issue of whether Sullivan should be disqualified" and "[n]or have Plaintiffs shown how the information is crucial to preparation of their case").

Finally, as discussed above, the facts as Carolina Bedding (NC) claims them to be would not support disqualification in any case, and so cannot be considered "crucial" to any hypothetical motion that Carolina Bedding (NC) may file at some point in the future.

### C. Even if Some of the Information Carolina Bedding (NC) Seeks Is Relevant, Other Means Exist of Obtaining That Information.

Even if some of the information that Carolina Bedding (NC) seeks is both relevant and crucial to its case, it must also show that "no other means exist to obtain th[at] information." *Nationwide*, 278 F.3d at 628.  RSS and its counsel have already presented evidence disproving Carolina Bedding (NC)'s allegations, however: first when counsel represented, during a teleconference with this Court, that they were not shareholders of RSS; and again here, with Mr. Andrew's declaration stating that he and Jerry Williams "are the only two shareholders in RSS." (Dkt. No. 42, at PageID 1207; Ex. A, at ¶ 6).

Thus, Carolina Bedding (NC) has already obtained the information it seeks—though perhaps not the answer it wanted.  Further discovery into this issue is thus unnecessary.

### D. In the Alternative, an *In-Camera* Inquiry Would Be Sufficient to Resolve Any Remaining Concerns that This Court Has.

Carolina Bedding (NC)'s insinuations aside, the fact that RSS is disinclined to allow opposing counsel to dig through its attorneys' personal finances does not mean that RSS is unwilling to address these issues entirely.  Rather, to the extent this Court has any concerns about the issues raised in Carolina Bedding (NC)'s motion, RSS and counsel offer to answer *in camera* any questions the Court may have.  Such an inquiry would allow this Court to ask questions of RSS's counsel, outside of the presence of opposing counsel, in order to determine whether Carolina Bedding (NC)'s concerns are worth any further time.

As the Supreme Court has recognized, "discovery . . . may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984). Accordingly, when a party seeks discovery that implicates "the privacy interests of individual non-parties," the court must balance those interests against "the interests of the parties in obtaining relevant discovery." *Berryman v. SuperValu Holdings, Inc.*, No. 3:05CV169, 2008 WL 4934007, at *6 (S.D. Ohio Nov. 18, 2008) (quoting *Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, No. Civ. A. 00-760, 2002 WL 31098543, at *1 (E.D. La. Sept.18, 2002); quotation marks omitted). This is just such discovery, and an *in camera* inquiry would strike a proper balance here.

The use of *in camera* review to resolve parties' and non-parties' privacy concerns is well accepted. Indeed, Courts in this circuit have employed similar procedures in a number of other situations involving such privacy interests. *See, e.g.*, *Mann v. Univ. of Cincinnati*, 152 F.R.D. 119, 126 (S.D. Ohio 1993) ("Plaintiff was entitled to an in camera review of such [medical] records prior to disclosure to defense counsel to determine if the necessity for disclosure outweighed the Plaintiff's right to privacy in those most personal of documents"); *Fisher v. City of Cincinnati*, 753 F. Supp. 692, 694 (S.D. Ohio 1990) ("A Court should examine the potential conflict between the asserted right of access to medical records and the patient's right to privacy."); *Quinn v. ConAgra Foods Packaged Foods LLC*, No. 3:09-CV-214, 2010 WL 3603780, at *2 (S.D. Ohio Sept. 10, 2010) (similar, regarding employment files); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 1790189, at *6 (E.D. Mich. May 10, 2011) ("The DOJ's concern with the incidental disclosure of private information can be addressed through this Court's *in camera* review of the recordings, which will precede any public disclosure."). As in those cases, an *in camera* inquiry here could balance counsel's privacy

12

interests against whatever concerns this Court has about the relationship between RSS and its legal counsel. Thus, to the extent that this Court believes that it may help resolve these issues, RSS proposes such an inquiry as an alternative to Carolina Bedding (NC)'s open-ended request for discovery from counsel.

### III. CONCLUSION

For the foregoing reasons, RSS respectfully asks this Court to deny Carolina Bedding (NC)'s motion to take discovery from its legal counsel.

Date: May 12, 2014

Respectfully submitted,

 /s/ Shawn J. Organ
Shawn J. Organ (OH 0042052)
(sjorgan@ocslawfirm.com)
  *Trial Attorney*
Douglas R. Cole (OH 0070665)
(drcole@ocslawfirm.com)
Joshua M. Feasel (OH 0090291)
(jmfeasel@ocslawfirm.com)
Gerrod L. Bede (OH 0088075)
(glbede@ocslawfirm.com)
**Organ Cole LLP**
1335 Dublin Road, Suite 104D
Columbus, Ohio  43215

*Counsel for Plaintiff Retail Service Systems, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 12, 2014, a true and accurate copy of the foregoing Plaintiff Retail Service Systems, Inc.'s Response to Defendant Carolina Bedding (NC)'s Motion to Allow Discovery from Plaintiff's Counsel (Dkt. No. 60), was filed with the Court's Electronic Filing System, which will serve all counsel of record in this matter, including:

>Daniel J. Clark, Esq.
>William A. Sieck, Esq.
>Angelyne E. Lisinski, Esq.
>Vorys, Sater, Seymour and Pease LLP
>52 East Gay Street
>P.O. Box 1008
>Columbus, Ohio  43216
>
>*Attorneys for Defendants Carolina Bedding Direct, LLC (North Carolina), Carolina Bedding Direct, LLC (Florida), and Mattress By Appointment, LLC*

　/s/ Shawn J. Organ
*One of the attorneys for Plaintiff Retail Service Systems, Inc.*