# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Retail Service Systems, Inc.,**

        **Plaintiff,**

                              Case No. 2:13-cv-994
                              JUDGE SMITH
v.                              Magistrate Judge Abel

**Carolina Bedding Direct, LLC,** *et al.***,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant's, Mattress By Appointment, LLC's, objections (Doc. 95) to the portion of the Report and Recommendation issued by the Magistrate Judge (Doc. 89), which recommends that the entry of default against Mattress By Appointment remain standing. Plaintiff, Retail Service Systems, Inc. has filed a response (Doc. 99) urging that the Magistrate Judge's Report and Recommendation be affirmed. Because *de novo* review of the matter confirms the Magistrate Judge's conclusions, Mattress's objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation is **AFFIRMED**.

    **I.    BACKGROUND AND POSTURE**

According to the allegations in this case, Power Marketing Direct, Inc., was the predecessor in interest to the plaintiff, Retail Service Systems. (Doc. 1, Compl. at ¶¶ 2-3). The CEO of all of the defendant companies, Darren Conrad, was, at one time, an officer with Power Marketing. *Id.* at ¶¶ 1, 13. When he left Power Marketing in 2003, Conrad signed a 3-year non-compete agreement. *Id.* at ¶¶ 14-15. Notwithstanding this fact, soon after departing, he went into business in competition with Power Marketing, using Power's confidential materials. *Id.* at ¶¶

16-38. Following legal action by Power Marketing, an Ohio Court of Common Pleas issued preliminary and then permanent injunctions – finding that Conrad and his entities had violated the non-compete and Ohio's Uniform Trade Secrets Act. (Doc. 1, Exs. A-B (decisions of the Common Pleas Court)). During the course of that litigation and after, Conrad and his entities apparently continued to violate the injunctions. In fact, in its last decision in 2009, the Common Pleas Court awarded punitive damages because of "Defendant's flagrant, on-going competition with [Power Marketing], despite his License and Separation agreements and despite the preliminary injunction order put in place by this Court, all of which prohibit such conduct . . . ." (Doc. 1, Ex. B, Franklin County Com. Pl. Order at 18).

On October 4, 2013, following alleged further violations of Ohio's Trade Secrets Act and continued use of Power Marketing's proprietary materials, Power Marketing's successor, Retail Service, sued a number of Conrad's companies (of which Mattress By Appointment is one). (Doc. 1 Compl. *in passim*). On October 7, 2013, the Clerk of this Court issued summons to Mattress By Appointment via certified mail at the following address:

> Mattress By Appointment, LLC
> c/o Statutory Agent Darren B. Conrad
> 320 1st Street North, Apt. 904
> Jacksonville Beach, FL 32250-6949

(Doc. 2, Summons Issued; Doc. 3, 1st Certificate of Mailing; Doc. 11, Green Card & Envelope). No one claimed the certified mail package. (Doc. 89, Ex. 1, USPS Tracking Print-Out; Doc. 11, Green Card & Envelope at 4 (clerk notes certified mail returned)). Presumably because the envelope had Plaintiff's counsel's address on it, the United States Postal Service returned the service materials to Plaintiff's counsel rather than the Clerk of this Court. (Doc. 11, Green Card & Envelope at 2, 4 (reflecting that the green card was executed by Douglas Cole, an attorney in Plaintiff's attorneys' firm)). Plaintiff's counsel then filed the envelope and green card with the

2

Clerk of this Court whereupon, the Clerk attempted service by regular mail. *Id.*; (Doc. 12, 2d Certificate of Mailing). Again, summons and a copy of the complaint were sent to:

> Mattress By Appointment, LLC
> c/o Statutory Agent Darren B. Conrad
> 320 1st Street North, Apt. 904
> Jacksonville Beach, FL 32250-6949

(Doc. 12, 2d Certificate of Mailing). This time the service package was not returned to sender.

None of Conrad's entities, including Mattress By Appointment, responded to the summons or in any way answered the lawsuit. Thus, on January 24, 2014, Retail Service applied for and, on January 27, obtained, an entry of default against Mattress by Appointment. (Doc. 15, App'l for Default; Doc. 16 Ent. of Default). Immediately on the heels of the entry, Retail Service moved for a default judgment. (Doc. 17, Mot. for Default Judgment).

Three days later, Mattress By Appointment finally entered the case and moved to set aside the default. (Doc. 18, Mot. to Set Aside). In support of its motion, Mattress attached affidavits of Darren Conrad and Reid Penuel (Florida counsel for Mattress). (Doc. 18, Exs. 2-3). Conrad avers that he was never served with summons or a complaint. (Doc. 18, Ex. 2, Conrad Aff. at ¶ 3). Penuel admits that he knew about the pendency of this case in early December, shortly after service was attempted by regular mail, and well before the entry of default. (Doc. 18, Ex. 3, Penuel Aff. at ¶ 3). Yet, he claims that the failure to respond by his clients was the result of local Ohio counsel (an unidentified predecessor counsel to Vorys, Sater, Seymour and Pease, LLP) failing to timely file a motion to dismiss on his client's behalf. *Id.* at ¶¶ 5-6.

Whether the entry of default against Mattress By Appointment should be set aside, or whether it should mature into a default judgment, thereafter became the subject of numerous filings. (Docs. 17, 18, 30, 31, 32, 38 (motions, responses, and replies regarding whether to set aside default or render judgment)). In addition to those filings, between the filing of the motion

3

for default and the Report and Recommendation, the Magistrate Judge conducted no fewer than five conferences with counsel for the parties. (Docket reflects minute entries on February 7, 13, and 19 as well as March 18, and April 28, 2014). On July 25, 2014, the Magistrate Judge issued a Report and Recommendation recommending that this Court deny Mattress By Appointment's motion to set aside the entry of default. (Doc. 89, Rpt. & Rec. at 7-9). Mattress has filed various objections to that recommendation. (Doc. 95, Obj. to Rpt. & Rec.). Retail Service has responded. (Doc. 99, Re. in Opp. to Obj.).

## II. STANDARD OF REVIEW

The duty of a district judge, when reviewing the report and recommendation of a magistrate judge upon a dispositive motion, is clear; "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C) (2012). General objections, however, are insufficient to preserve issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## III. DISCUSSION

Mattress tenders four objections to the Magistrate Judge's recommendation. Mattress objects to:

1. The Report's denial of Defendant's Motion to Set Aside, which was effectively unopposed because Plaintiff never filed an opposition or contradicted the legal or factual basis of the Motion;
2. The Report's conclusion that Mattress by Appointment was properly served pursuant to Ohio law, when the undisputed evidence shows a lack of actual notice and, therefore, failure of service;

4

3. The Report's conclusion that Mattress by Appointment demonstrated an intent to thwart judicial proceedings, when the undisputed evidence shows that Defendant lacked actual notice of service but, upon later learning of the lawsuit, that Defendant promptly and clearly intended and attempted to defend; and,

4. The Report's conclusion that the default should not be set aside, when the Report otherwise correctly concludes that Mattress by Appointment has a meritorious defense and that the delay due to any default has not prejudiced Plaintiff.

(Doc. 95, Obj. to Rpt. & Rec. at 1-2) (footnote omitted). Each shall be addressed in turn.

**A.    Opposition to the Motion to Set Aside**

It is true, as Mattress points out, that "[f]ailure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees." S.D. Ohio Civ. R. 7.2(a)(2) (2014). It is also true, that Retail Service's formal "opposition" to Mattress' motion to set aside consisted mainly of argument that, due to ongoing discovery disputes, the matter was not ripe for decision. (Doc. 31, Memo. in Opp. to Mot. to Set Aside at 6; *see also* Doc. 32, Reply in Supp. of Mot. Default Judgment). However, local rule 7.2 says that "[f]ailure to file a memorandum in opposition *may* [not must] result in the granting of [a] motion . . . ." S.D. Ohio Civ. R. 7.2(a)(2) (emphasis added). Moreover, Retail Service had (and has) moved for the entry of a default judgment. (Doc. 17, Mot. for Default Judgment). Setting aside the entry of default and granting a default judgment are opposing (if not mutually exclusive) concepts. Under the circumstances, the Court will not pretend that Retail Service's failure to file a renewed formal opposition following discovery amounts to withdrawal of its opposition to Mattress' motion to set aside the entry of default. Furthermore, the burden to show "good cause" for the set-aside is Mattress'. Fed. R. Civ. P. 55(c). Even had Retail Service filed nothing in response to the motion to set aside, if Mattress failed to show

5

"good cause" for the relief requested, it should have been denied. This objection is **OVERRULED**.

B.     **Propriety of Service in Light of Conrad's Affidavit**

Mattress was correctly served under the rules. Federal Rule of Civil Procedure 4(e)(1) allows service according to the rules for service followed by courts of general jurisdiction in either the state in which the district court is located or the state where service is made. This Court sits in Ohio. Mattress is located in Florida.

The Ohio rules permit the clerk of a court to make service by United States certified or express mail. Ohio Civ. R. 4.1(A)(1)(a); *see also, e.g.*, Fla. R. Civ. P. 1.070(i). Moreover, the Ohio rules provide for a scenario where, as here, the certified mail goes unclaimed:

> **(D) United States certified or express mail service unclaimed.** If a United States certified or express mail envelope . . . was unclaimed, the clerk shall forthwith . . . enter the fact and method of notification on the appearance docket. If the attorney, or serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by United States ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. . . . . Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing. . . . . Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery. If the ordinary mail envelope is returned undelivered, the clerk shall forthwith notify the attorney, or serving party.

Ohio Civ. R. 4.6(D).

In this case, the Clerk of this Court issued summons to Mattress By Appointment via certified mail at the following address:

> Mattress By Appointment, LLC
> c/o Statutory Agent Darren B. Conrad
> 320 1st Street North, Apt. 904
> Jacksonville Beach, FL 32250-6949

6

(Doc. 2, Summons Issued; Doc. 3, 1st Certificate of Mailing; Doc. 11, Green Card & Envelope). No one claimed the certified mail package. (Doc. 89, Ex. 1, USPS Tracking Print-Out; Doc. 11, Green Card & Envelope at 4 (clerk notes certified mail returned)).  Presumably because the envelope had Plaintiff's counsel's address on it, the United States Postal Service returned the service materials to Plaintiff's counsel rather than the Clerk of this Court. (Doc. 11, Green Card & Envelope at 2, 4 (reflecting that the green card was executed by Douglas Cole, an attorney in Plaintiff's attorneys' firm)).  Mattress attempts to attack the validity of this service attempt – suggesting that the USPS should have made more delivery attempts, that it is suspicious that the green card was signed by Plaintiff's counsel rather than the Clerk of this Court, and that the receipt number in the USPS tracking print-out cited by the Magistrate judge varies by one digit from the tracking number in the Clerk's Certificate of Mailing. (Doc. 95, Obj. to Rpt. & Rec. at 7-8).

First, the responsibility of the Clerk under Ohio Rule of Civil Procedure 4.1(A)(1)(a) is to send the mailing by certified mail.  Regardless of the diligence of mailmen in Jacksonville, that was done in this case. (Doc. 3, 1st Certificate of Mailing).  The principle of parsimony (or Occam's Razor) dispenses with Mattress' remaining two arguments.  The green card (a computer generated document) displays a tracking number matching the USPS print-out (another computer generated document) and both show an address in Jacksonville Beach, Florida 32250. (*Compare* Doc. 11, Green Card & Envelope at 1-2 *with* Doc. 89, Ex. 1, USPS Tracking Print-Out).  The Clerk's office certification (a document typed by a human being with fingers) shows an identical address but the 20-digit tracking number is off by a single digit. (*Compare* Doc. 3, 1st Certificate of Mailing (tracking number 70121640000107725433) *with* Doc. 11, Green Card & Envelope at 2 (tracking number 70121640000207725433)).  Is it more probable that someone in the Clerk's

7

office mistyped one number? Or is it more probable that some sort of convoluted plot or series of coincidences transpired to create a false tracking record and therefore the incorrect impression that the service package arrived in Jacksonville, that notice was given, and yet that the package went unclaimed? Occam's Razor.

Realizing that Mattress failed to claim the certified mail, Plaintiff's counsel filed the envelope and green card with the Clerk of this Court whereupon, in accordance with Ohio Rule of Civil Procedure 4.6(D), the Clerk attempted service by regular mail. (Doc. 12, 2d Certificate of Mailing). Again, summons and a copy of the complaint were sent to:

> Mattress By Appointment, LLC
> c/o Statutory Agent Darren B. Conrad
> 320 1st Street North, Apt. 904
> Jacksonville Beach, FL 32250-6949

*Id.* This time the service package was not returned to sender.

Mattress objects that this was not effective service because service attempted in this manner merely raises a presumption of effective service which is rebuttable by sufficient evidence. (Doc. 95, Obj. to Rpt. & Rec. at 6 (quoting *Schroeder v. Gold*, No. 10052, 1987 Ohio App. LEXIS 5641, at *8 (Ct. App. Jan 22, 1987)). *Schroeder*, Mattress notes, went on to say that "Courts have found 'sufficient evidence' to rebut the presumption where uncontradicted sworn statements were introduced which stated the party never received service of the complaint, even where her opponent complied with Civ. R. 4.6 and had service made at an address where it could reasonably be anticipated that the defendant would receive it." 1987 Ohio App. LEXIS 5641, at *8 (citing *Rafalski v. Oates*, 477 N.E.2d 1212, 1215 (Ohio Ct. App. 1984)). Because Conrad has averred that he was never served, argues Mattress, the presumption is rebutted and there never was service. (Doc. 95, Obj. to Rpt. & Rec. at 6-7; *see also* Doc. 18, Ex. 2, Conrad Aff. at ¶ 3).

However, the rule of *Rafalski*, restated in *Schroeder*, is not as black and white as Mattress would have it.  As one Ohio Court explained:

> In *Rafalski v. Oates*, 477 N.E.2d 1212, 1215 (Ohio Ct. App. 1984), the court held:
>
>> "Where a party seeking a motion to vacate makes an uncontradicted sworn statement that she never received service of a complaint, she is entitled to have the judgment against her vacated even if her opponent complied with Ohio Civ. R. 4.6 and had service made at an address where it could reasonably be anticipated that the defendant would receive it. *Cox v. Franklin*, Cuyahoga App. No. 32982, (Ohio Ct. App. (Jan. 10, 1974). Appellant has presented no evidence to show that appellee actually received service.  It is reversible error for a trial court to disregard unchallenged testimony that a person did not receive service."
>
> The *Rafalski* case was interpreted and applied in a series of cases from the Sixth District Court of Appeals.  In the first such case, the court stated:
>
>> "We conclude that if a defendant has only his self-serving testimony that he did not receive service of process, even though service of process was mailed, by ordinary mail, to him at his correct address, and was not returned, *** a trial court might find, in such a case, that it simply did not believe the testimony of the defendant that he did not receive service of process." *Security Nat'l Bank & Trust Co. v. Murphy*, Clark App. No 2552, 1989 Ohio App. LEXIS 2868, at *4 (Ct. App. July 20, 1989).
>
> In a subsequent case, the Sixth District expanded upon their previous holding, stating, with regard to *Rafalski*:
>
>> "While some cases hold that an uncontroverted affidavit is sufficient to require the default judgment to be found void *ab initio*, these holdings do not prohibit the trial court from assessing competency and credibility. Therefore, we find that the trial court must determine whether sufficient evidence of nonservice was presented to find the default judgment void *ab initio*." United *Home Fed. v. Rhonehouse*, 601 N.E.2d 138, 144 (Ohio Ct. Ap. 1991).
>
> We find this interpretation of *Rafalski* persuasive.
>
> In the instant case, appellant testified that he never received service of the complaint.  However, appellant does not contend that service was sent to an incorrect address.  Further, when the certified mail envelope was returned marked "unclaimed" ordinary mail service was made to the correct address, and was not returned.  Also, testimony was received that notice of the default judgment was sent by ordinary mail to the same address and was not returned.

9

> As a result, we cannot hold that the trial court erred in finding that appellant's testimony was not credible. Nor can we hold that the trial court erred in denying appellant's motion for relief from judgment.

*Redfoot v. Mikouis*, Accel. Case No. 96-T-5398, 1996 Ohio App. LEXIS 5415, at *5-8 (Ct. App. Nov. 29, 1996) (citations edited for uniformity); *see also Infinity Broad. v. Brewer*, 2003-Ohio-1022, at ¶ 8 (Ct. App.) ("we have rejected *Rafalski*"); *Old Meadow Farm Co. v. Petrowski*, Accel. Case No. 2000-G-2265, 2001 Ohio App. LEXIS 782, at *8-10 (Ct. App. March 2, 2001) (distinguishing *Rafalski*).

Mattress' Florida attorney admits that he knew about the pendency of this case in early December, shortly after service was attempted by regular mail, and well before the entry of default. (Doc. 18, Ex. 3, Penuel Aff. at ¶ 3). Given that circumstance, Conrad's affidavit is more persuasive in what it fails to say than what it says. As in *Redfoot*, Conrad "does not contend that service was sent to an incorrect address." 1996 Ohio App. LEXIS 5415, at *7. Like the appellant in *Redfoot*, all Conrad swears is, "I have not been served with a summons or complaint . . . ." (Doc. 18, Ex. 2, Conrad Aff. at ¶ 3). That is a statement which, even if literally true, is perfectly consistent with receiving a notice that certified mail is waiting to be collected at the post office but never getting it – or with having someone else go through your regular mail and throw out everything that looks like a lawsuit before you take delivery of anything. Under the circumstances, since the Ohio rules delineating how service is to be made were followed, and as (given Penuel's admission) someone with Mattress clearly knew this case was ongoing shortly after service was attempted, the Court finds Retail Service sufficiently served Mattress. (*See* Doc. 18, Ex. 3, Penuel Aff. at ¶ 3). Mattress' objection is **OVERRULED**.

## C.  Intention to Thwart Judicial Proceedings

The orders of the state courts are quite sufficient to show that, in the past, Conrad and his entities have displayed little respect for legal strictures imposed either by contract or by orders of

10

courts. (*See, e.g.* Doc. 1, Ex. B, Franklin County Com. Pl. Order at 18 (chastising Conrad for his "flagrant [and] on-going" violations of the court's order)). Penuel's affidavit makes it crystal clear that Mattress was aware, shortly after service was attempted by regular mail, of the pendency of this lawsuit. (Doc. 18, Ex. 3, Penuel Aff. at ¶ 3). Yet, only days after default entered at the end of January did Mattress finally have an attorney enter an appearance on its behalf in this Court and then, only for the purpose of seeking to have default set aside and the case dismissed on a number of somewhat dubious grounds. (Doc. 18, Ex. 1, Proposed Mot. to Dismiss at 2-6 (arguing insufficient service despite the facts discussed above and arguing inappropriate venue despite previous court decisions explaining that Conrad, the CEO of Mattress, stole trade secrets bearing on the same business in which Mattress is apparently engaged, from a company in Ohio)).[1] Even assuming, contrary to the facts in the record, that Mattress actually had a *bona fide* belief that service had not successfully been accomplished upon them, their proper remedy was to seek dismissal under Federal Rule of Civil Procedure 12(b)(5) – not sit on their hands until after default entered. Under the circumstances, and in light of the history of this case, it is reasonable to conclude, as the Magistrate Judge did, that Mattress's failure to participate was born of an intention to thwart judicial proceedings. *See S. Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005). The objection is **OVERRULED**.

D.    **Effect of Defenses and Lack of Prejudice**

In determining whether an entry of default should be set aside, a three factor test is used:

(1)    Whether the default was willful;
(2)    Whether a set-aside would prejudice plaintiff; and

---

[1] The proposed motion also argues that the claims for civil conspiracy and violations of Ohio Uniform Trade Secrets Act are redundant and insufficiently pled. (Doc. 18, Ex. 1, Proposed Mot. to Dismiss at 6-11). The motion to dismiss was not ultimately filed and these issues have not been fully briefed. Thus, the Court reserves judgment on the merits of these criticisms.

(3) Whether the alleged defense was meritorious.

*United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983) (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C. Cir. 1980)).  It is true, as Mattress points out, that:

> It has been found that a district court abuses its discretion in denying a motion to set aside an entry of default when two of the three factors have been demonstrated by the defendant: the defendant had a meritorious defense and no prejudice would result to the plaintiff if the matter were to go forward.

*O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003) (citing *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193-94 (6th Cir. 1986)); (*see also* Doc. 95, Obj. to Rpt. & Rec. at 8 (mistakenly purporting to quote *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838-39 (6th Cir. 2011) for the above proposition)).  However, the Sixth Circuit has also recognized that in some cases "particularly culpable conduct by the defendants [can] outweigh [] two factors and tip the balance toward denial of relief." *Dassault Systemes, SA*, 663 F.3d at 844 (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 293 (6th Cir. 1992)).

Here, though the Magistrate Judge found that "plaintiff has not shown that it suffered prejudice from the delay and it appears that MBA has a meritorious defense,"[2] he also found particularly culpable conduct by Mattress in that it had shown "an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." (Doc. 89, Rpt. & Rec. at 8-9 (quoting *Shepard Claims Serv.*, 796 F.2d at 194)).  Having already concluded, upon *de novo* review, that this finding was correct, this Court also shall conclude that Mattress' attempts to thwart these proceedings outweigh the other two factors.

---

[2] This is not to suggest that Mattress would, absent default, be likely to win at trial.  The test of a "meritorious defense," for purposes of determining whether to set aside a default, "is not whether a defense is likely to succeed on the merits; rather, the criterion is merely whether 'there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Dassault Systemes, SA*, 663 F.3d at 843 (quoting *United States v. $ 22,050.00*, 595 F.3d 318, 326 (6th Cir. 2010)).

12

That is, it appears that Retail Service failed to meet the rather demanding test of prejudice that the Sixth Circuit has used in such cases:

> [D]elay alone is not a sufficient basis for establishing prejudice." *INVST Fin. Group* [*v. Chem-Nuclear Sys.*], 815 F.2d [391,] 398 [(6th Cir. 1987)] (internal quotation marks omitted).  Nor does increased litigation cost generally support entry of default. *$22,050*, 595 F.3d at 325.  Instead, "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *INVST Fin. Group*, 815 F.2d at 398 (internal quotation marks omitted).

*Dassault Systemes, SA*, 663 F.3d at 842.  It also appears that Mattress has, by way of a proposed motion to dismiss attached as an exhibit to its motion to set aside, asserted defenses which meet the very low bar for determining merit in these circumstances. *$ 22,050.00*, 595 F.3d at 326 (quoting *INVST Fin. Group*, 815 F.2d at 399; *Keegel*, 627 F.2d at 374)) (noting that "cases discussing meritorious defenses in the context of setting aside default do not require that a defense be supported by detailed factual allegations to be deemed meritorious.  Instead, all that is needed is '"a hint of a suggestion" which, proven at trial, would constitute a complete defense.'").  However, the larger circumstances must also be taken into account.  This case has essentially been litigated twice before in Ohio state court by predecessors of the current parties with the result that, both times, Conrad and his entities lost. (Doc. 1, Exs. A-B (decisions of the Franklin County Common Pleas Court)).  Under the circumstances, Mattress' assertion of "defenses" only meets the "meritorious" standard because the language in *$ 22,050.00* is so broad that it is somewhat difficult to conceive what, short of complete silence, would fail to count as an assertion of a meritorious defense.  Under the circumstances, the lack of prejudice and the defenses alleged by Mattress, when balanced against Mattress' willful failure to participate in this litigation (even after Mattress was served and knew about the pending case) shows that the entry of default was just when entered and ought to remain.  The objection is **OVERRULED**.

13

## IV. CONCLUSION

The Court **OVERRULES** all of Mattress By Appointment's objections.  Accordingly, the Magistrate Judge's Report and Recommendation is **ADOPTED AND AFFIRMED**.  Mattress' motion to set aside was not unopposed.  As a matter of procedure, even if it had been unopposed, it would not necessarily have been granted and, in any case, Mattress did not show good cause for setting aside the entry of default.  Mattress was properly served and actually aware of the lawsuit shortly after being served.  Mattress did demonstrate an intent to thwart judicial proceedings under the circumstances and this outweighed both the fact that no prejudice to Plaintiffs was discernible and Mattress' alleged "defenses."

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*　　　　　　
　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**